UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NINA SUGGS, | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 08-0938 (PLF) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

OPINION

Plaintiff Nina Suggs alleges that the defendant, the District of Columbia, violated the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), by failing to arrange for certain assessments of her child, A.S., and thereby depriving him of the special education to which he is entitled under the Act. The matter was referred to Magistrate Judge Alan Kay for a Report and Recommendation on the disposition of the parties' cross-motions for summary judgment pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. Judge Kay filed his Report on May 11, 2009, and the plaintiff filed objections.

A party "may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. FED. R. CIV. P. 72(b)(2). When a party files written objections to any part of the magistrate judge's recommendation, the Court considers *de novo* those portions of the recommendation to which objections have been made, and "may accept, reject, or modify the recommended decision[.]" Id. In this case, Judge Kay recommended that the District of Columbia's motion for summary judgment be granted in its entirety and that Ms. Suggs' cross-motion be denied. Ms. Suggs then objected to those

recommendations and to each ground upon which they were based. Since Ms. Suggs challenged the Report in its entirety, the Court conducted a *de novo* review of both motions for summary judgment.

After considering all of the relevant papers, the administrative record, Judge Kay's Report, and the entire record in this case, the Court issued an Order on September 30, 2009, in which it (1) accepted in part and rejected in part the reasoning contained in Judge Kay's Report, (2) denied both motions for summary judgment without prejudice, (3) vacated the administrative ruling, and (4) remanded the case for further proceedings at the administrative level.[1] The Court explains its reasoning below and identifies the issues that should be considered by the Hearing Officer on remand.

## I.  BACKGROUND

Nina Suggs is the parent of A.S., a resident of the District of Columbia who was ten years old at the time of the administrative hearing in this case. AR at 11; Pl.'s Mot. at 5. Classified by the District of Columbia Public Schools ("DCPS") as learning disabled with "speech and language deficits," A.S. is entitled to receive special education and related services

---

[1] The papers reviewed by the Court in connection with this matter include the following: Ms. Suggs' Complaint ("Compl."); Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."); Plaintiff's Statement of Material Facts Not in Dispute ("Pl.'s Statement"); Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and Defendant's Cross-Motion for Summary Judgment ("Def.'s Mot."); Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Opp."); Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply"); Plaintiff's Memorandum in Surreply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Surreply"); Plaintiff's Objections to Report and Recommendation ("Pl.'s Obj."); Defendant's Revised Opposition to Plaintiff's Objections to Report and Recommendation ("Def.'s Opp."); and the administrative record ("AR").

under the IDEA. Until the summer of 2008, A.S. attended High Road Primary School, a private school in the District of Columbia that provides a "special education program for students with academic and behavioral problems." AR at 11-12.

In April 2007, Ms. Suggs filed an administrative complaint with the Student Hearing Office, a division of the D.C. Office of the State Superintendent of Education ("OSSE") that processes complaints concerning the school district's provision of special education services and assigns each complaint to a "hearing officer," a neutral adjudicator employed by OSSE, not by DCPS. See AR at 12. Ms. Suggs alleged that DCPS had wrongfully failed to perform a "neuropsychological" assessment of A.S. Id. Agreeing with Ms. Suggs, the Hearing Officer who reviewed her complaint ordered DCPS to fund an "independent" evaluation — i.e., an evaluation performed by an examiner who is chosen by the parent and is not an employee or agent of DCPS. Id.

A.S. subsequently underwent a neurological assessment arranged by Ms. Suggs' attorney and performed by Keita Vanterpool, a "senior consultant" with a Doctor of Chiropractic degree. See AR at 125. In a written report, Dr. Vanterpool noted that A.S. had sustained two potentially significant head injuries as a child, summarized the results of a variety of tests she had performed on A.S., and concluded that while A.S.'s "cerebellar function is within normal limits," his "[c]erebral function is delayed in the cognitive areas." Id. at 127-28. She recommended a range of special education services and also suggested that A.S. should undergo a "psychiatric evaluation . . . to assess [his] emotional and psychological state" and an "EEG/MRI to determine if there is residual/visible brain damage as a result of the 2 falls in early childhood." Id. at 128.

A multidisciplinary team ("MDT") — consisting of the director of High Road Primary School, one of the school's special education teachers, and an educational advocate acting on behalf of A.S. — met on December 11, 2007 to review Dr. Vanterpool's report and discuss its relevance to A.S.' educational program. See AR at 13, 130-31. The team members also decided that A.S. should undergo the psychiatric examination, electroencephalogram ("EEG") and magnetic resonance imaging ("MRI") suggested by Dr. Vanterpool so that his educational program could be further tailored, if necessary, in light of the results of those tests. Id. Those recommendations for further testing were transmitted by facsimile to DCPS immediately after the team's meeting. Id. at 130-34.

When DCPS had not conducted the recommended psychiatric, EEG or MRI exams by the end of January 2008, Ms. Suggs filed another complaint with the Student Hearing Office. She alleged that DCPS had violated federal law by failing to conduct the recommended examinations and requested that DCPS be ordered to fund independent testing. See AR at 119-20. Lawyers for Ms. Suggs and DCPS presented evidence and arguments to the assigned Hearing Officer in February 2008, and less than a week later, the Hearing Officer issued a Hearing Officer Decision ("HOD") denying Ms. Suggs' claim for relief. See id. at 14. Ms. Suggs then filed a complaint in this Court, seeking review and reversal of the HOD.

## II. LEGAL FRAMEWORK

### A. The IDEA

The Individuals with Disabilities Education Act requires all states and the District of Columbia to provide resident children with disabilities a "free appropriate public education"

("FAPE"). 20 U.S.C. § 1412(a)(1). A FAPE consists of "special education and related services" that, among other things, "include an appropriate . . . education" and "are provided in conformity with the individualized education program required" by the statute. 20 U.S.C. §§ 1401(9)(C)-(D)

The IDEA attempts to guarantee children with disabilities a FAPE by requiring states and the District of Columbia to institute a variety of detailed procedures. "'[T]he primary vehicle for implementing'" the goals of the statute "'is the individualized education program, which the [IDEA] mandates for each child.'" Harris v. District of Columbia, 561 F. Supp. 2d 63, 65 (D.D.C. 2008) (citing Honig v. Doe, 484 U.S. 305, 311-12 (1988)). The individualized education program, or IEP, is a written document that describes the impact of the child's disabilities, annual "academic and functional" goals for the child, and the forms of individualized education and support that will be provided to the child in view of his disabilities and in order to aid his developmental and academic progress. See 20 U.S.C. § 1414(d)(1)(A). Because the IEP must be "tailored to the unique needs" of each child, Bd. of Educ. v. Rowley, 458 U.S. 176, 181 (1982), it must be regularly revised in response to new information regarding the child's performance, behavior, and disabilities. See 20 U.S.C. §§ 1414(b)-(c). Furthermore, the school district must take care to generate that new information as needed, through assessments and observations of the child. See 20 U.S.C. §§ 1414(c)(1)-(2). To be sufficient to confer a FAPE upon a given child, an IEP must be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. v. Rowley, 458 U.S. at 176.

*B. Standard of Review*

A court tasked with reviewing an administrative decision in an IDEA case "shall receive the records of the administrative proceedings," "shall hear [or consider] additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "The burden of proof falls upon the party challenging the administrative determination, who must at least take on the burden of persuading the court that the hearing officer was wrong." Hawkins v. District of Columbia, 539 F. Supp. 2d 108, 112 (D.D.C. 2008) (quoting Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005)) (internal quotation marks omitted). While the court "may not substitute its own views for those of the Hearing Officer," R.D. v. District of Columbia, 374 F. Supp. 2d 84, 89 (D.D.C. 2005), an opinion of a Hearing Officer receives "less deference . . . than is the case in typical administrative proceedings." S.S. v. Howard Road Academy, 585 F. Supp. 2d 56, 64 (2008) (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)). In particular, where a hearing decision lacks "reasoned and specific findings," it merits "little deference." Reid v. District of Columbia, 401 F.3d at 521.

Where neither party to an IDEA proceeding seeks to supplement the administrative record with additional evidence, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." S.S. v. Howard Road Academy, 585 F. Supp. 2d at 64 (internal quotation marks omitted). To make their arguments regarding almost every substantive issue in this case, the parties have relied exclusively on the administrative record and have offered no additional evidence. The Court therefore will evaluate

the evidence and the arguments using a preponderance-of-the-evidence standard, with appropriate deference to the conclusions of the Hearing Officer.  Ms. Suggs has submitted additional documentary evidence, however, with regard to two discrete issues.  Those issues are: (1) whether she authorized the assessments at issue here (the MRI, the EEG, and the psychiatric examination), see Pl.'s Opp. at 8-9, and (2) whether DCPS was aware of the MDT meeting that took place at High Road in December 2007.  See id. at 6-8.  Because the Court resolves those issues in Ms. Suggs' favor based on evidence in the administrative record, there is no need to address Ms. Suggs' additional evidence.

Finally, the District has submitted additional evidence in support of its newly raised claim that Ms. Suggs' complaint is moot.  See Def.'s Reply at 7.  Because that claim is procedural and does not involve review of the administrative record as authorized by the IDEA, the Court discusses the applicable standard of review separately.  See infra at 17-18.

III.  DISCUSSION

Ms. Suggs' complaint has two separate claims for relief arising from the District's decision not to fund an MRI, an EEG, and a psychiatric examination of A.S.  First, Ms. Suggs claims that by choosing not to arrange for the requested tests, the District failed to evaluate A.S. "in all areas of suspected disability," as required by 20 U.S.C. § 1414(b)(3)(B).  Compl. ¶ 22. This violation allegedly caused A.S. to "experienc[e] harm to his educational development."  Id. Second, Ms. Suggs asserts that the District's failure to provide the requested assessments of A.S. has denied him the FAPE to which he is entitled under the IDEA.  Id. ¶ 25.  This denial of a FAPE allegedly has caused A.S. to "experienc[e] harm to his educational development."  Id. ¶ 26.

As an initial matter, the Court notes that these two claims logically state only a single ground for relief. Even if a party alleges that a school district has violated one of the specific requirements of the IDEA — such as the obligation to evaluate a child "in all areas of suspected disability" — that party is entitled to relief only if that violation resulted in the denial of a FAPE to the child. See 20 U.S.C. § 1415(f)(E)(i)-(ii); 34 C.F.R. § 300.513(a). Furthermore, to succeed on an IDEA claim, a party need *only* prove that a school district has denied the child in question a FAPE; it is not necessary to prove that the school district also violated one of the statute's other, more detailed provisions. See 20 U.S.C. § 1415(f)(E)(i). To succeed on either of her claims, then, Ms. Suggs must demonstrate just one proposition: that the District denied A.S. a FAPE by failing to test him as recommended.

The District has at times claimed that its failure to conduct the requested assessments is "at most a procedural violation of the IDEA," rather than a substantive one. Def.'s Opp. at 7. The premise of the District's argument is correct. Under the law of this Circuit, a procedural violation of the IDEA is actionable only if it "affected the student's *substantive* rights" — that is, only if the procedural violation led to a substantive violation. Lesesne v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original); see also Kingsmore *ex rel.* Lutz v. District of Columbia, 466 F.3d 118, 120 (D.C. Cir. 2006). As a result, regardless of whether the failure to conduct the assessments in question is denominated substantive or procedural, the proposition Ms. Suggs must prove to succeed on her claim is the same: she must show that the District's actions did or will deny A.S. a FAPE by depriving him of educational benefits to which he is entitled. Unfortunately, that issue was not thoroughly considered at the administrative level.

*A. The Hearing Officer's Decision*

In ruling in the District's favor based on the documents and testimony entered in evidence at the administrative hearing, the Hearing Officer explained his reasoning in a single long paragraph in which he listed a series of propositions that he considered determinative. See AR at 13-14. Those determinative propositions may be summarized as three findings of fact or conclusions of law: (1) Ms. Suggs "failed to meet [her] burden of proof that [she] gave her consent to an MRI/EEG examination and psychiatric evaluation"; (2) Ms. Suggs "failed to meet [her] burden of proof that DCPS was aware of the High Road meeting of December 11, 2007" at which the MDT concluded that further testing of A.S. was desirable; and (3) Ms. Suggs failed to demonstrate that A.S. had been denied a FAPE. AR at 13-14. Only the issue addressed by the last of those three conclusions is determinative in this case. The Court first explains why questions regarding Ms. Suggs' consent and the District's knowledge of the MDT meeting do not affect the outcome of this litigation. It then discusses the analytical framework that the Hearing Officer should have used to decide whether A.S. has been deprived of a FAPE.

1. Ms. Suggs' Consent to the Requested Assessments

The obligation of a parent asserting a claim under the IDEA is to plead and prove that the defendant school district deprived either her or her child of a substantive benefit guaranteed by the statute. See 20 U.S.C. §§ 1415(E); supra at 8. As provided by the District of Columbia Municipal Regulations, a parent challenging one of the District's actions before a Hearing Officer bears the burden of proving that "the action and/or inaction or proposed placement is inadequate or adequate to provide the student with a Free Appropriate Public Education." D.C. MUN. REGS. tit. 5, § 3030.3. The Hearing Officer in this case impermissibly

9

expanded that obligation, deciding that Ms. Suggs could not make out a successful claim for relief because she had failed to "meet [her] burden of proof that [she] gave her consent" to performance of the MRI, EEG, and psychiatric examination that she requests. AR at 13. That decision of the Hearing Officer is neither factually nor legally correct.

Neither the Hearing Officer nor the District has cited any legal authority for the proposition that a parent seeking to compel a school district to perform evaluations must plead and prove, as part of her case-in-chief, that she formally consented to the performance of those assessments. In the past, this Court has considered the issue of consent relevant where a parent has *refused* to provide that consent or engaged in obstructive behavior, thereby preventing the defendant school district from taking the action the parent sought to compel. See Walker v. District of Columbia, 157 F. Supp. 2d 11, 33 (D.D.C. 2001) (refusing to find that DCPS had given child an improper placement where child "was rarely available to be evaluated or monitored on a consistent basis"). But there is no contention in this case that Ms. Suggs has in any way prevented the District from conducting the assessments in question. As a result, the issue of consent is not material.

Even if the Hearing Officer were correct that consent is legally relevant, his conclusion that Ms. Suggs failed to prove that she consented is simply wrong as a factual matter. Ms. Suggs' educational advocate, Sharon Millis, met with High Road's director and one of its teachers in December 2007 and agreed with them that A.S. should undergo an MRI, an EEG, and an additional psychiatric evaluation. See AR at 130. Ms. Millis testified before the Hearing Officer that prior to December 2007, Ms. Suggs granted her power-of-attorney to consent to evaluations of A.S. in Ms. Suggs' stead. AR at 66-68. That testimony was uncontroverted by the

10

District, and the Hearing Officer cited no reason to disbelieve it; in fact, he made no reference to that testimony whatsoever in his ruling. In light of the fact that Ms. Millis had the power to consent on behalf of Ms. Suggs and herself recommended the tests in question, the Hearing Officer was clearly wrong in concluding that Ms. Suggs had not consented to the performance of the assessments.

2. DCPS' Knowledge of the MDT Meeting

According to the Hearing Officer, Ms. Suggs' claim also must fail because she did not prove that "DCPS was aware of the High Road meeting of December 11, 2007 that recommended an MRI/EEG examination and psychiatric evaluation." AR at 13. The legal relevance and factual basis of this declaration are unclear. There is no question that DCPS was promptly notified of the occurrence and outcome of the December MDT meeting. The record shows, and the District concedes, that a copy of the notes taken at the meeting by one of the MDT members was faxed to DCPS immediately after the meeting on December 11, 2007. AR at 134; Pl.'s Statement ¶ 11; Def.'s Mot. at 15. Perhaps the Hearing Officer meant that Ms. Suggs had failed to prove that DCPS knew about the meeting *before* it occurred, but he cited no legal authority that would require Ms. Suggs to make such a showing or to provide such notice. Neither the Hearing Officer nor the District has suggested that the District's prior knowledge of the meeting, or the lack of such knowledge, somehow changes the analysis of the central issue in this case: whether A.S.'s right to a FAPE has been denied or impeded. As a result, the Hearing Officer impermissibly relied on this factor in finding in the District's favor.

### 3. The Substantive Effects of the District's Omission

As discussed above, the task of the Hearing Officer in this case was to determine whether the District's failure to test A.S. as recommended by the MDT deprived the child of a FAPE. That determination depends largely upon the adequacy of A.S.'s IEP, since the IEP is the primary means of ensuring that each child with disabilities receives a FAPE. See Harris v. District of Columbia, 561 F. Supp. 2d at 65 (citing Honig v. Doe, 484 U.S. at 311-12). Of course, because the MRI, EEG and psychiatric examination at issue here have not been performed, the Hearing Officer could not conclude with any confidence that A.S. has traumatic brain injuries that would be revealed by the exams and necessitate further revision of A.S.'s IEP. But such a degree of certainty is not required by case law or statute. The Hearing Officer needed only to determine whether, in light of all available information regarding A.S.'s disabilities, behavior, and academic performance, A.S's IEP is "reasonably calculated" to provide educational benefits. Bd. of Educ. v. Rowley, 458 U.S. at 204.

An IEP may not be reasonably calculated to provide benefits if, for example, a child's social behavior or academic performance has deteriorated under his current educational program, see Reid v. District of Columbia, 401 F.3d at 519-20; the nature and effects of the child's disability have not been adequately monitored, see Harris v. District of Columbia, 561 F. Supp. 2d at 68; or a particular service or environment not currently being offered to a child appears likely to resolve or at least ameliorate his educational difficulties. See Gellert v. District of Columbia Public Schools, 435 F. Supp. 2d 18, 25-27 (D.D.C. 2006). In deciding whether A.S.'s IEP is reasonably calculated to provide him educational benefits in light of all available information, the Hearing Officer might have considered whether A.S. has made adequate

12

progress under his IEP, whether there is reason to believe that A.S. suffers from undiagnosed traumatic brain injury, and whether there are treatments for traumatic brain injury that would be likely to resolve some of A.S.'s academic problems.

The Hearing Officer considered none of these factors in any depth.  Instead, he dismissed Ms. Suggs' claim that A.S. cannot receive a FAPE without further testing on three grounds: (1) A.S.'s "overall neurological assessment is within normal limits"; (2) "[c]ounsel for the parent has failed" to demonstrate that an additional psychiatric evaluation is necessary because A.S. had a psychiatric evaluation in July 2006; and (3) "[t]he student is attending a private full-time day special education program at High Road Primary School and counsel for the parent has not shown that the student is denied educational benefits in that program." AR at 13-14.  None of those conclusory statements adequately addresses the arguments of Ms. Suggs or the evidence in the record before the Hearing Officer.

The Hearing Officer's declaration that A.S.'s "overall neurological assessment is within normal limits" is an inaccurate characterization of the results of the neurological examination of A.S. performed in 2007.  Keita Vanterpool, who performed that exam, concluded that "[A.S.'s] overall neurological assessment is within normal limits *with the exception of the following*: [h]e is not operating at proper academic level for students of the same age and grade." AR at 127 (emphasis added).  In addition, she opined that A.S.'s "[c]erebral function is delayed in the cognitive areas." Id. at 127-28.  It is possible, of course, that in the opinion of the Hearing Officer, these statements do not suffice to establish that A.S. may suffer from traumatic brain injury.  If that is the case, however, the Hearing Officer must *say* so and explain his reasons for that conclusion, after accounting for the evidence in the record (rather than ignoring or

mischaracterizing it). Otherwise, the Court cannot defer to his findings with any confidence.

In addition to mischaracterizing the neurological evaluation, the Hearing Officer conflated the three types of exams requested by Ms. Suggs. Observing that the 2007 neurological evaluation of A.S. "does not indicate that the evaluator had the July 27, 2006 independent psychiatric evaluation, had reviewed it or had any knowledge of its existence," the Hearing Officer went on to conclude that "[c]ounsel for the parent has failed" to prove "that a new psychiatric evaluation was necessary in light of the current July 27, 2006 psychiatric evaluation." AR at 14. For the reasons discussed below, see infra at 15, the Court cannot determine whether the Hearing Officer correctly concluded that the requested psychiatric exam would have been duplicative of the one performed in 2006. But while the 2006 exam may have eliminated the need for a new *psychiatric* exam, it certainly would not have performed the same function as an MRI or EEG, the other two tests requested by Ms. Suggs. Those tests involve assessments of the physical structure of the brain that cannot be completed through a psychiatric exam. The Hearing Officer's apparent conclusion that Dr. Vanterpool's failure to mention the 2006 psychiatric evaluation was a fatal flaw in Ms. Suggs' case as a whole does not account for the very different natures of a psychiatric exam on the one hand, and an MRI or an EEG on the other. This failing is particularly troubling in light of comments made by the Hearing Officer at the hearing which indicated that neither he nor the District's lawyer understood the nature or function of an EEG. See AR at 44-45.

Finally, the Hearing Officer failed to lay any apparent foundation for his conclusion that "counsel for the parent has not shown that the student is denied educational benefits." AR at 13-14. At the administrative hearing, Sharon Millis, A.S.'s and Ms. Suggs'

educational advocate, testified that the MDT had adopted Dr. Vanterpool's recommendations for further testing of A.S. "[b]ecause there was a suspected disability that had not been confirmed. We needed to make sure that we had the correct disability classification for the student and in turn the correct programming and placement for him." AR at 73.  More specifically, she explained that

> [i]t had been suspected that A.[S.] actually had an additional disability that had not been determined yet.  He had had some severe injuries when he was younger, and his behavior had been getting a little bit more unusual, and so it was determined that . . . an EEG and an MRI were recommended to see if a TBI [traumatic brain injury] classification was warranted.

AR at 60.  Ms. Suggs, through her counsel, thus alleged and adduced evidence that A.S.'s educational program may have been insufficient because it was not adapted to all of his possible disabilities, but the Hearing Officer ignored this evidence completely.  The Hearing Officer cannot simply disregard such evidence; he must consider it, evaluate it and explain its impact on his decision.

Having found the Hearing Officer's reasoning unpersuasive, the Court has the authority to undertake its own review of the record, determine whether the plaintiff has met her burden of proof, and issue judgment in the case.  See 20 U.S.C. § 1415(I)(2)(C)(iii); Reid v. District of Columbia, 401 F.3d at 526.  Unfortunately, it cannot do so on the basis of the current record, which does not include several key documents relied upon by the Hearing Officer and the parties.  As noted above, the Hearing Officer accorded significant weight to the existence and, presumably, the contents of the psychiatric evaluation of A.S. performed in 2006 and summarized in a written report.  See AR at 11-14.  Although the transcript of the administrative hearing indicates that the Hearing Officer received that report and entered it in evidence, see AR

at 53-54, it is nowhere in the administrative record received by the Court. Furthermore, the Hearing Officer also reviewed and relied upon a prior HOD issued in September 2007, see AR at 13, as well as a July 2006 HOD and documents submitted by Ms. Suggs as part of an earlier due process complaint. See AR at 12, ¶¶ 3-7. These documents, too, are absent from the record before the Court.

Left with an incomplete record and a cursory HOD, the Court has no choice but to remand this case to the Hearing Officer for further proceedings. The record should be supplemented with the missing materials, and the Hearing Officer must fully consider and address the issues discussed in this Opinion. "It is a central principal of administrative law that the agency must base its decision on the record; ignorance of one party's central contention robs that decision of being described as a principled review of what the record revealed." T.H. v. District of Columbia, C.A. No. 07-695, 2009 WL 1561408, at *1 (D.D.C. June 1, 2009).

*B. Procedural Arguments*

The parties have raised two procedural arguments that have yet to be addressed. Ms. Suggs argued before the Hearing Officer, and insists before this Court, that a default judgment should have been entered against DCPS because the District failed to file an answer to her administrative due process complaint. See Pl.'s Mot. at 15-18. In his Report, Magistrate Judge Kay rejected this contention. The Court agrees with his conclusion and adopts his reasoning, with the exception of his finding that "the Hearing Officer's decision was supported by the record in this case and the facts presented to the Hearing Officer during the course of the hearing." Report at 16. The Court also notes that Ms. Suggs could have moved at the administrative level for the Hearing Officer to issue an order requiring the District to file an

16

answer, but did not do so.[2]  The extraordinary remedy of a default judgment is certainly not warranted where a party has failed to pursue less drastic solutions.

Finally, the District has asserted that since the filing of the complaint in this case, the plaintiff's claims have become moot.  See Def.'s Reply at 7-8.  "Where the defendant asserts . . . that the question sought to be adjudicated has been mooted by subsequent developments, and consequently that no justiciable controversy is presented for the court to decide, the defendant bears the burden of establishing that the case is in fact moot."  Flores v. District of Columbia, 437 F. Supp. 2d 22, 28 n.12 (D.D.C. 2006) (citations and internal quotation marks omitted).  The District argues that any need for the MRI, EEG, or psychiatric assessment requested by Ms. Suggs has been mooted by "additional services" provided to A.S. by the District "that have provided the relief sought by [p]laintiff."  Def.'s Reply at 7.  Those services consist of a neuropsychological exam performed in fall 2008, an "auditory processing evaluation" conducted in October 2007, a "speech and language evaluation" completed in May 2008, various reviews of those and prior examinations of A.S. by the MDT, a change in school placement, and additional "speech and language services."  See id. at 7-8.

The additional evaluations disclosed by the District do not render Ms. Suggs' complaint moot.  Ms. Suggs has explicitly requested that the District fund an MRI and an EEG.  See Compl. at 4.  The District has provided neither, and it has made no attempt to demonstrate that the assessments of A.S. that it has conducted yield the same type of information that an MRI or an EEG would.  Where a school district has provided a parent with some forms of relief, but

---

[2] The IDEA authorizes hearing officers to order a school district's compliance with the statute's procedural requirements.  See 20 U.S.C. § 1415(f)(3)(E)(iii).

not with all of the specific relief requested by her, her claims are not moot. See Lesesne v. District of Columbia, 447 F.3d at 833. Furthermore, based on the evidence submitted by the District, the Court cannot determine whether the "neuropsychological" assessment of A.S. conducted in 2008 renders Ms. Suggs' request for a psychiatric examination moot. The psychiatric assessment requested by Ms. Suggs and recommended by Dr. Vanterpool was intended to "assess [A.S.'s] emotional and psychological state and to determine if medication or other treatment modalities" might aid A.S. "in his activities of daily living." AR at 128. Because the District has submitted as evidence only a heavily redacted version of the 2008 neuropsychological report, the Court cannot determine whether that report serves those functions. On remand the Hearing Officer, once in possession of the complete report, may determine whether Ms. Suggs has been given the relief she seeks with regard to the psychiatric exam.

## IV.  CONCLUSION

For the foregoing reasons, the Court issued an Order on September 30, 2009, in which it DENIED without prejudice both Ms. Suggs' and the District's motions for summary judgment and REMANDED this case to the Hearing Officer for further proceedings consistent with this Opinion.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: January 19, 2010